■ LYNDSEY WILCOX, Respondent, v NEWARK VALLEY CENTRAL SCHOOL DISTRICT et al., Appellants. [904 NYS2d 523]—

Peters, J. Appeal from an order of the Supreme Court (Tait, J.), entered April 27, 2009 in Tioga County, which, among other things, partially granted defendants' motion to dismiss the complaint.

Plaintiff was employed as a probationary physical education teacher and coached the girls field hockey teams at defendant Newark Valley Central School District (hereinafter NVCSD) commencing in the 2006-2007 school year. At that time, she was involved in a romantic relationship with Todd Broxmeyer, a well-known field hockey expert who ran a number of clinics in Broome County and acted as a volunteer coach to the NVCSD field hockey teams. In December 2007, Broxmeyer was arrested and charged with raping a female field hockey player he coached at a different school district. As part of a continuing investigation, the Tioga County Sheriff's Department interviewed NVCSD students and field hockey team members regarding any inappropriate conduct on the part of Broxmeyer and plaintiff's involvement in or awareness of any such conduct.

On January 11, 2008, plaintiff was summoned to a meeting at the school during the course of which defendant Diane Arbes, the NVCSD's high school principal, allegedly stated in front of other school officials that plaintiff should take a leave of absence "for the safety of the students in the district." Days later, on January 14, 2008, plaintiff received a letter from Arbes—which was allegedly copied to defendant Mary Ellen Grant, the superintendent of the NVCSD, and Jill Keeler, the president of plaintiff's union and a teacher and field hockey coach at the NVCSD—advising her to "refrain from any one-on-one conversations with students." During a meeting in the school auditorium the following month, Arbes purportedly informed all players on the NVCSD varsity and junior varsity girls field hockey teams, as well as several parents that were present, that the NVCSD has no recourse but to terminate plaintiff and that plaintiff had "acquiesced in or was not protesting her termination." Around that same time, plaintiff was notified by Grant that her termination was being recommended to the NVCSD Board of Education. Upon plaintiff's request for a written statement of reasons, Grant sent a letter to her stating that, based upon information from law enforcement officials, plaintiff was aware of conduct by "a school volunteer coach" that violated

the NVCSD's sexual harassment policy and failed to report that conduct to NVCSD officials. Plaintiff was formally terminated from her employment in March 2008.

Plaintiff then commenced this action alleging a host of claims, including causes of action for libel and slander as well as violations of her state and federal due process rights, including the failure to provide her with a name clearing hearing. Prior to joinder of issue, defendants moved to dismiss the complaint pursuant to CPLR 3211 or, alternatively, for summary judgment. Supreme Court denied defendants' summary judgment motion as premature, but partially granted their motion by dismissing the first, second, fourth and seventh causes of action, and partially dismissing the sixth cause of action. Defendants appeal.

Defendants contend that Supreme Court should have dismissed plaintiff's sixth (libel per se) cause of action in its entirety and the eighth (slander per se) cause of action because the alleged libelous and slanderous statements were neither sufficiently pleaded nor of a defamatory nature and, in any event, were protected by a qualified privilege. "The allegations of the complaint must at this stage of the litigation be deemed true and construed in plaintiff['s] favor, affording [her] the benefit of every reasonable inference, the very limited object being to ascertain whether any cognizable claim for relief is made out" (*Hurrell-Harring v State of New York*, 15 NY3d 8, 20 [2010] [citation omitted]; *see Clearmont Prop., LLC v Eisner*, 58 AD3d 1052, 1054 [2009]).

We reject defendants' assertion that plaintiff failed to comply with the pleading requirements of CPLR 3016 (a). Our review of the complaint discloses that plaintiff set forth "the particular words complained of" (CPLR 3016 [a]), as well as the "time, manner and persons to whom the alleged defamatory statements were made" (*Rabushka v Marks*, 229 AD2d 899, 900 [1996]; *see Saha v Record*, 177 AD2d 763, 766 [1991]; *Pappalardo v Westchester Rockland Newspapers*, 101 AD2d 830 [1984], *affd* 64 NY2d 862 [1985]; *compare Dobies v Brefka*, 273 AD2d 776, 777 [2000], *lv dismissed* 95 NY2d 931 [2000]).

Addressing the sufficiency of plaintiff's allegations, whether the statements complained of are "reasonably susceptible of a defamatory connotation" is a determination to be made by the court in the first instance (*James v Gannett Co.*, 40 NY2d 415, 419 [1976]; *see Silsdorf v Levine*, 59 NY2d 8, 12 [1983], *cert denied* 464 US 831 [1983]). "The alleged defamatory words should be considered 'in the context of the entire statement or publication as a whole, tested against the understanding of the

average [listener]' " (*Allen v CH Energy Group, Inc.*, 58 AD3d 1102, 1103 [2009], quoting *Aronson v Wiersma*, 65 NY2d 592, 594 [1985]; *see Rossi v Attanasio*, 48 AD3d 1025, 1027 [2008]; *Versaci v Richie*, 30 AD3d 648, 648-649 [2006], *lv denied* 7 NY3d 710 [2006]). Although "a statement of opinion accompanied by a full recitation of the facts on which it is based will be deemed a pure opinion, . . . a statement of opinion that implies a basis in undisclosed facts is actionable 'mixed opinion' " (*Clark v Schuylerville Cent. School Dist.*, 24 AD3d 1162, 1163 [2005]; *see Rossi v Attanasio*, 48 AD3d at 1027; *Ferris v Loyal Order of Moose Oneonta Lodge No. 465*, 259 AD2d 914, 915 [1999], *lvs dismissed* 94 NY2d 838 [1999], 94 NY2d 873 [2000]).

Plaintiff's sixth cause of action, which is grounded on Arbes' January 2008 letter directing plaintiff to "refrain from any one-on-one conversations with students," should have been dismissed in its entirety. This utterance was not a statement of fact or opinion about plaintiff, but rather a directive issued to plaintiff by her superior, and nothing therein impugns her abilities as a teacher. Despite plaintiff's assertions to the contrary, these words are not reasonably susceptible of the defamatory connotation that she engaged in misconduct, since to do so would strain the words beyond their fair meaning (*see Clark v Schuylerville Cent. School Dist.*, 24 AD3d at 1163; *Bigman v Dime Sav. Bank of N.Y., FSB*, 144 AD2d 318, 319 [1988]; *see generally James v Gannett Co.*, 40 NY2d at 419). As such, this statement cannot support a claim of libel.

As to the alleged defamatory statements asserted in plaintiff's eighth cause of action, we agree with Supreme Court that they are actionable. Unlike the directive issued by Arbes in the January 11, 2008 letter, her statement that plaintiff should take a leave of absence "for the safety of the students in the district" is subject to a defamatory interpretation that plaintiff presents a risk of harm to the students in her care. Considering the statement in the context of the highly publicized scandal within the NVCSD community and the ongoing investigation involving Broxmeyer, a reasonable listener could interpret the statement as implying plaintiff's possible participation in or awareness of the crimes against the students, or as linking her to immoral and reprehensible conduct (*see generally Mencher v Chesley*, 297 NY 94, 99 [1947]). The same can fairly be said of the statement allegedly uttered by Arbes to the field hockey players—as well as several parents—that plaintiff had acquiesced in her termination. As plaintiff asserts, Arbes' statement in that regard "has a precise meaning that is capable of being proven true or false" (*Rabushka v Marks*, 229 AD2d at 902; *see 600 W. 115th St. Corp.*

*v Von Gutfeld*, 80 NY2d 130, 142 [1992], *cert denied* 508 US 910 [1993]). Furthermore, inasmuch as each statement was unaccompanied by a full recitation of the facts and implied a basis in those undisclosed facts, they constitute an actionable mixed opinion (*see Gross v New York Times Co.*, 82 NY2d 146, 153-154 [1993]; *Clark v Schuylerville Cent. School Dist.*, 24 AD3d at 1164; *Brown v Albany Citizens Council on Alcoholism*, 199 AD2d 904, 905 [1993]). Thus, plaintiff sufficiently stated a cause of action for slander per se based on these statements.

Notwithstanding defendants' assertion to the contrary, dismissal of plaintiff's slander claim on the basis of qualified privilege is not appropriate at this juncture. A claim of qualified privilege is an affirmative defense to be raised in defendants' answer and "does not lend itself to a preanswer motion to dismiss pursuant to CPLR 3211 (a)" (*Demas v Levitsky*, 291 AD2d 653, 661 [2002], *lv dismissed* 98 NY2d 728 [2002]). Rather, defendants must plead the privilege as an affirmative defense and thereafter move for summary judgment on that defense, supporting the motion with competent evidence establishing a prima facie showing of qualified privilege (*see id.*). In the event that defendants make such a showing, the burden would then shift to plaintiff to demonstrate that Arbes' statements were uttered with malice, either under the common-law or constitutional standard (*see id.* at 661-662). By asserting that the allegations of the complaint establish a qualified privilege as a matter of law, defendants attempted to "short-circuit that procedure" by "improperly placing the burden on plaintiff to make competent allegations of malice in anticipation of the affirmative defense" (*id.* at 662; *see Garcia v Puccio*, 17 AD3d 199, 201 [2005]). For these reasons, defendants' motion to dismiss the eighth cause of action was properly denied.

Defendants also assert that Supreme Court erred in denying their motion to dismiss the third and fifth causes of action, which allege that plaintiff's discharge deprived her of liberty without due process of law guaranteed by the NY and US Constitutions. A liberty interest claim of this sort—commonly referred to as a "stigma plus" claim—requires a plaintiff to allege "(1) the utterance of a statement sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she claims is false, and (2) a material state-imposed burden or state-imposed alteration of the plaintiff's status or rights" (*Sadallah v City of Utica*, 383 F3d 34, 38 [2d Cir 2004] [internal quotation marks and citations omitted]; *see Segal v City of New York*, 459 F3d 207, 212 [2d Cir 2006]; *Velez v Levy*, 401 F3d 75, 87-88 [2d Cir 2005]). Because a defamatory

statement, standing alone, does not amount to a constitutional deprivation, "the 'plus' imposed by the defendant[s] must be a specific and adverse action clearly restricting the plaintiff's liberty—for example, the loss of employment" (*Velez v Levy*, 401 F3d at 87-88; *see Patterson v City of Utica*, 370 F3d 322, 330 [2d Cir 2004]; *Donato v Plainview-Old Bethpage Cent. School Dist.*, 96 F3d 623, 630 [2d Cir 1996], *cert denied* 519 US 1150 [1997]). "[W]hen the state fires an employee and publicly charges that she [or he] acted dishonestly or immorally, due process guarantees the employee an opportunity to defend her [or his] 'good name, reputation, honor or integrity' " (*Donato v Plainview-Old Bethpage Cent. School Dist.*, 96 F3d at 630, quoting *Board of Regents of State Colleges v Roth*, 408 US 564, 573 [1972]; *see Wisconsin v Constantineau*, 400 US 433, 437 [1971]).

We iterate the circumstances leading up to plaintiff's termination, as they are significant. It was widely known that Broxmeyer had been arrested and charged with criminal sexual conduct involving members of the girls field hockey team of a different school district. The NVCSD's field hockey players were aware that plaintiff had a dating and live-in relationship with Broxmeyer at the time, and had been questioned regarding any inappropriate conduct by Broxmeyer and plaintiff's involvement and whereabouts during any such conduct. Against this backdrop, we find that Arbes' statement to the field hockey players—the only students in the NVCSD exposed to Broxmeyer and the investigation—as well as several parents that plaintiff had acquiesced in her termination was sufficiently stigmatizing and damaging to her reputation as a school teacher (*see Segal v City of New York*, 459 F3d at 213). Furthermore, this statement, alleged by plaintiff to be false, was capable of being proven false and was accompanied by a sufficiently proximate "plus"—her termination from employment with the NVCSD (*see Velez v Levy*, 401 F3d at 88-89; *Donato v Plainview-Old Bethpage Cent. School Dist.*, 96 F3d at 631).

Moreover, the charges lodged against plaintiff in Grant's letter setting forth the reasons for her termination—that plaintiff was aware of and failed to report conduct on the part of a "school volunteer coach" that violated the NVCSD's sexual harassment policy—provides an additional, independent basis for her stigma plus claim. Stigmatizing statements about a government employee upon his or her discharge implicate a liberty interest where " 'the stigmatizing charges are placed in the discharged employee's personnel file and are likely to be disclosed to prospective employers' " (*Donato v Plainview-Old Bethpage Cent. School Dist.*, 96 F3d at 631, quoting *Brandt v*

Board of Coop. Educ. Servs., Third Supervisory Dist., Suffolk County, N.Y., 820 F2d 41, 44 [2d Cir 1987]; see Velger v Cawley, 525 F2d 334, 336-337 [2d Cir 1975], revd on other grounds sub nom. Codd v Velger, 429 US 624 [1977]). Although Grant submitted an affidavit in support of defendants' motion averring that the letter was a private communication between her and plaintiff and that it is "not [her] intention" to have this letter included in plaintiff's personnel file, plaintiff alleges otherwise and asserts the likelihood of disclosure. Further, the Board of Education did not stipulate that it would never disclose the charges to plaintiff's prospective employers. Mindful that the case is before us on a motion to dismiss, it would be inappropriate at this juncture to resolve this factual issue regarding the likelihood of disclosure to plaintiff's prospective employers (see Brandt v Board of Coop. Educ. Servs., 820 F2d at 44).

As to the final prong of plaintiff's due process claims, defendants allege that since plaintiff did not request a name clearing hearing and was provided with a sufficient opportunity to clear her name, there can be no due process violation. We disagree. Due process requires a postdeprivation name-clearing hearing where a nontenured employee has been stigmatized in the course of a decision to terminate his or her employment (see Segal v City of New York, 459 F3d at 214; Patterson v City of Utica, 370 F3d at 335-336). "This hearing gives the plaintiff an opportunity to hear and answer first-hand any stigmatizing charges, clearing his [or her] name of any false statements made about him [or her], and curing the injury to his [or her] reputation" (Patterson v City of Utica, 370 F3d at 335; accord Segal v City of New York, 459 F3d at 215). Here, plaintiff requested such a hearing in a February 2008 letter to the members of the NVCSD's Board of Education, but was never given an opportunity to address the Board (see Di Orio v Utica City School Dist. Bd. of Educ., 305 AD2d 1114, 1115 [2003]; Garcia v Board of Educ. of Socorro Consol. School Dist., 777 F2d 1403, 1418 [10th Cir 1985], cert denied 479 US 814 [1986]). Furthermore, we cannot conclude that the Board of Education's receipt and purported consideration of the February 2008 letter, wherein plaintiff's attorney responded to Grant's letter recommending her termination, was sufficient to satisfy the requirements of due process (see Patterson v City of Utica, 370 F3d at 336-337). Accordingly, plaintiff has stated a cause of action for deprivation of a liberty interest without due process under both the US and NY Constitutions, and Supreme Court therefore correctly denied defendants' motion to dismiss her third and fifth causes of action.

Mercure, J.P., Spain, Rose and Kavanagh, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied defendants' motion to dismiss the sixth cause of action; motion granted to that extent and said cause of action dismissed in its entirety; and, as so modified, affirmed.